UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

SUSANNAH OVERBY,

       Plaintiff,

    v.

NORTHSIDE HOSPITAL, INC.,

       Defendant.

CIVIL ACTION NO.
1:21-cv-05256-JPB

## ORDER

This matter comes before the Court on the Magistrate Judge's Final Report and Recommendation [Doc. 58]. This Court finds as follows:

## FACTUAL BACKGROUND

This case arises from Susannah Overby's employment and subsequent discharge from Northside Hospital, Inc. The Report and Recommendation ("R. & R.") sets forth the facts of this case in considerable detail. See [Doc. 58, pp. 2–25]. The Court incorporates those facts by reference herein and below reviews Susannah Overby's (A) Employment, Performance and Supervisors; (B) Family and Medical Leave Act ("FMLA") Leave Requests; and (C) Termination of Employment.

## A.    Employment, Performance and Supervisors

Overby began her employment with Northside Hospital, Inc. ("Northside") on July 31, 2000.  [Doc. 58, p. 4].  Most recently, Overby served as a Manager for Northside's Financial Planning and Analysis Department, a position she began in 2018.  Id.  In that role, Overby reported to Ryan Cliett, the Financial Planning and Analysis Director.  Id.  Overby testified that she and Cliett initially had a good working relationship but that his demeanor changed around June 2018, when he became dismissive, condescending and irritable.  Id. at 5.

Overby received an annual performance review from Cliett for the period of October 1, 2017, through September 30, 2018.  Id.  Overby received a rating of 3.12 out of 5.0 , indicating that she "Met Objectives and Standards."  Id.  Cliett also completed Overby's final performance review with Northside, which covered the period of October 1, 2018, through September 30, 2019.  Id.  There, Overby received a rating of 3.53 out of 5.0, again indicating that she "Met Objectives and Standards."  Id.  After this performance review, Overby received a raise and a bonus.  Id. at 6.  Nonetheless, Cliett testified that Overby was the lowest-ranked manager of his direct reports during the time that he supervised her.  Id.

In fall 2019, Billy Wright replaced Cliett as Overby's supervisor following a merger between Northside and Gwinnett Health System.  Id. at 7.  Cliett did not

discuss his assessment of Overby's performance with Wright prior to the transfer. Id. at 8. Wright held weekly one-on-one meetings with Overby to receive reports on her progress, and Wright also met regularly with Cliett to discuss Wright's direct reports. Id. at 10–11. Overby testified that Wright provided positive feedback and encouragement during their weekly meetings. Id. at 11. However, Wright prepared a memorandum dated March 9, 2020, about Overby's performance. [Doc. 46-12]. In that memorandum, Wright stated that he had observed Overby's "low productivity" and intermittent absences for a period of four months. Id. at 4. He also stated that an email audit showed little workload traffic.[1] Id.

Wright never shared these alleged performance issues with Overby, and Overby testified that neither Cliett nor Wright ever told her that there were problems with her performance. Id. at 13, 19. Overby was unaware of any email audit, and she was never coached or counseled by Wright or Cliett about her performance at work. Id. at 13–14. Cliett seemed to expect that Wright would

---

[1] The record is unclear as to whether any email audit ever took place. When deposed, Wright could only recall that Cliett pulled an audit of Overby's email but that he (Wright) never saw it. [Doc. 58, p. 13]. Wright also could not remember the dates of the audit or if it took place while he was supervising Overby. Id. Cliett testified that he did not audit Overby's emails and could not recall an audit ever taking place. Id. Likewise, Cynthia Gist, Northside's Employee Relations Director, could not recall an audit of Overby's emails having ever been conducted. Id.

discuss Overby's performance with her, but Cliett himself never discussed any performance deficiencies with Overby or confirmed that Wright had those discussions.  Id. at 14.  At Cliett's recommendation, Wright contacted Cynthia Gist, Northside's Employee Relations Director, on March 9, 2020, faxing her the memorandum that he had prepared about Overby's performance.  Id. at 15.

Northside has employment policies that are relevant to this case.  The first is a Performance Evaluations Policy, which states that its "purpose and philosophy" is "[t]o provide feedback to employees at regular intervals and to provide coaching to assist employees in meeting performance and service excellence expectations." [Doc. 49-4, p. 1].  The policy states that "[e]mployees should be provided feedback and coaching regarding performance issues during a performance cycle."  Id.  If an employee receives an unsatisfactory rating during a performance evaluation period, that employee will be placed on a Performance Improvement Plan ("PIP").  Id.  If an employee does not improve by the end of the PIP, she may be subject to demotion or termination, but she will have access to a grievance process to appeal any such decision.  Id.

Second is the Progressive Discipline Policy.  [Doc. 49-5].  This policy provides that "[t]he major purpose of any disciplinary action is to correct inappropriate behavior or poor performance or attendance, prevent recurrence, and

promote satisfactory service by the employee involved when possible." <u>Id</u>. at 1.

Under the policy, disciplinary measures include "verbal warning[s], written

warning[s], suspension, demotion, job in jeopardy warning[s] or separation." <u>Id.</u>

The Progressive Discipline Policy also states the following:

> In most cases, one or more less severe steps will be taken prior
> to dismissal of an employee for violation of hospital rules,
> policies, standard of conduct, service excellence, and
> performance deficiencies.  Therefore, the method of
> disciplinary action chosen should be the one most likely to
> accomplish the overall purpose in the particular situation.  The
> Northside Hospital may, at its discretion, discipline or
> discharge an employee without following progressive
> discipline.

<u>Id.</u>

Overby was never placed on a PIP, and she did not receive any measures

under the Progressive Discipline Policy prior to her termination.  [Doc. 58, pp. 17,

19].  It is uncontested that Overby did not learn of any issues with her performance

until she retained counsel in this litigation.  <u>Id.</u> at 13.  Wright testified that he did

not see her performance issues improving, and Gist concurred.  <u>Id.</u> at 17–18.  Cliett

asserted that PIPs were not mandatory and that he and Wright never discussed

placing Overby on a PIP prior to her termination.  <u>Id.</u> at 18.  Cliett also stated that

he did not have a one-on-one conversation with Overby about her performance

issues between October 2019 (when he provided her last performance evaluation)

and when she was ultimately discharged.  Id. at 20.  In sum, neither Cliett, Wright nor Gist ever shared with Overby that her performance raised concerns.  See id. at 14 n.8.

## B.     FMLA Leave Requests

In October 2019, Overby learned that she would need knee surgery in early 2020.  Id. at 8.  She did not apply for FMLA leave at that time but informed Wright and Cliett that she would eventually need surgery.  Id.  In January 2020, Overby scheduled her surgery for February 4, 2020.  Id. at 9.  On January 22, 2020, Overby contacted Cigna, Northside's third-party leave administrator, and requested FMLA leave for her surgery.  Id.  Cigna indicated that Overby's request was "Eligible—Pending Determination," which meant that she met the minimum requirements for leave but had not yet been approved.  Id.  On January 29, 2020, while Overby's request was still pending, her physician cancelled the surgery.  Id. at 10.  Overby contacted Cigna and cancelled her FMLA request that day.  Id.

Overby's surgery was rescheduled for March 26, 2020.  Id. at 15.  On March 11, 2020, Overby submitted an FMLA leave request to Cigna and informed Wright that her surgery had been rescheduled.  [Doc. 55-1, p. 13].  Wright responded by stating "whatever you need."  [Doc. 58, p. 15].  Cigna contacted Overby on March 11, 2020, indicating that her FMLA leave request was "Eligible—Pending

Determination."  Id.  Cigna notified Cliett by email that same day, and Cliett forwarded the email to Wright, stating that he had left Gist a voicemail "on this."  Id.  Cliett also forwarded the email to Gist.  Id.

On March 17, 2020, Overby's March 26 surgery was cancelled because of COVID-19 and was not immediately rescheduled.  Id. at 16.  Overby contacted Cigna that same day and cancelled her leave request.  Id.  Her surgery was later rescheduled for May 1, 2020, but was quickly cancelled again because of COVID-19.  Id.  Overby did not request FMLA leave for the May surgery, nor did she inform anyone at work, because of how quickly the rescheduled surgery was cancelled.  Id. at 16.

It is undisputed that Cliett appeared annoyed with Overby's FMLA applications and that he rolled his eyes about the leave application notices.  Id. at 8. It is also undisputed, however, that no one stopped Overby from applying for FMLA leave for the February 4, March 26 or May 1 surgeries, that no one told Overby that she could not have surgery and that the last FMLA request submitted by Overby was for the March 26 surgery date.  Id. at 16.

## C.    Termination of Employment

On May 8, 2020, Wright sent an email to Gist to discuss the possibility of terminating Overby's employment.  Id. at 21.  He attached to that email a

memorandum (updated from his March 9, 2020 memorandum) describing Overby's alleged performance deficiencies.  Id.  In the May memorandum, Wright explained that as of fall 2019, Overby made slow progress, did not take initiative and failed to deliver creative solutions, and he specifically identified problems with her performance on the Contracts Project.  Id.  However, there were no plans to replace Plaintiff's position at that time.  Id. at 22.  To date, the Contracts Project remains incomplete.  Id. at 24.

Cliett and Wright were the ultimate decisionmakers with respect to Overby's termination.[2]  Id.  On May 13, 2020, Wright notified Overby during a phone call with Gist that her employment had been terminated.  Id.  Overby testified that her discharge came "out of the blue."  Id.  During the phone call, Overby asked why— if the reasons for her termination were performance-related—she had not been informed and why she had not been placed on a PIP.  Id. at 23.  Gist stated that "we are where we are."  Id.  Overby's termination became effective on May 27, 2020.  Id.

---

[2] In March 2020, the COVID-19 pandemic led Northside to consider how to decrease fixed costs.  [Doc. 58, p. 20].  In a declaration, Cliett stated that in light of the pandemic's financial impact and Overby's poor performance, he thought it was "prudent" to pursue termination.  [Doc. 53-9, p. 3].  However, Cliett also testified that Overby was terminated for performance issues and that, "off the top of [his] head," he could not think of any other reasons for her termination.  [Doc. 51, p. 64].  Overby was never informed that the financial impact of COVID-19 was a reason for her termination.  [Doc. 58, p. 23].

At the time she was discharged, Overby did not have an active FMLA leave request because her May 1 surgery had been quickly cancelled and not yet rescheduled.  Id. at 24.  Nevertheless, Wright and Cliett knew that Overby would eventually need surgery and that she would need to take FMLA leave.  Id.  Overby ultimately rescheduled her surgery for May 26, 2020, but she did not request FMLA leave because she had already been terminated, nor did she tell anyone at Northside about the May 26 surgery.  Id. at 24–25.  This lawsuit followed.

## PROCEDURAL HISTORY

Overby filed this action on December 23, 2021, against Northside.  [Doc. 1].  Overby claims that Northside terminated her employment because she requested leave under the FMLA.  She brought two claims against Northside:  one for interference with FMLA leave and one for retaliation.  Id. at 7–8.

On November 7, 2022, Northside moved for summary judgment on both of Overby's claims.  [Doc. 46-16].  That same day, Overby moved for partial summary judgment as to the interference claim.  [Doc. 48-1].  On February 17, 2023, Magistrate Judge John K. Larkins III issued a Final R. & R. in which he recommended denying both motions.  [Doc. 58].  Northside filed objections to the R. & R. on March 3, 2023.  [Doc. 60].

## ANALYSIS

**A.    Legal Standards**

A district judge has broad discretion to accept, reject or modify a magistrate judge's proposed findings and recommendations.  United States v. Raddatz, 447 U.S. 667, 680 (1980).  Pursuant to 28 U.S.C. § 636(b)(1), the Court reviews any portion of the Report and Recommendation that is the subject of a proper objection on a *de novo* basis and any non-objected-to portion under a "clearly erroneous" standard.  Notably, a party objecting to a recommendation "must specifically identify those findings objected to.  Frivolous, conclusive, or general objections need not be considered by the district court."  Marsden v. Moore, 847 F.2d 1536, 1548 (11th Cir. 1988).  Placing this burden on the objecting party "'facilitates the opportunity for district judges to spend more time on matters actually contested and produces a result compatible with the purposes of the Magistrates Act.'" United States v. Schultz, 565 F.3d 1353, 1361 (11th Cir. 2009) (quoting Nettles v. Wainwright, 677 F.2d 404, 409–10 (5th Cir. Unit B 1982)).

The Court will briefly discuss the legal standards applicable to Overby's claims.  The FMLA recognizes two types of claims:  interference and retaliation. Strickland v. Water Works & Sewer Bd. of City of Birmingham, 239 F.3d 1199, 1206 (11th Cir. 2001).  "To establish an FMLA interference claim, an employee

must show she was entitled to a benefit under the FMLA and her employer denied her that benefit." Ramji v. Hosp. Housekeeping Sys., LLC, 992 F.3d 1233, 1241 (11th Cir. 2021). An employee bringing a retaliation claim must establish "that (1) the employee engaged in statutorily protected conduct, (2) the employee suffered an adverse employment action, and (3) there is a causal connection between the two." Krutzig v. Pulte Home Corp., 602 F.3d 1231, 1234 (11th Cir. 2010).

The Eleventh Circuit Court of Appeals analyzes FMLA retaliation claims under the McDonnell Douglas burden-shifting framework. See Munoz v. Selig Enters., Inc., 981 F.3d 1265, 1275 (11th Cir. 2020) (explaining that after an employee establishes a prima facie case of retaliation, "the burden shifts to the employer to articulate a nondiscriminatory reason for the adverse action" and, "[i]f the employer does so, the burden shifts back to the employee to produce evidence that the employer's reason is pretextual"). At summary judgment, "the analyses for an FMLA interference claim based on an employee's termination and an FMLA retaliation claim are essentially the same": the Court asks "whether the evidence, viewed in the light most favorable to the non-moving party, establishes as a matter of law that the employer would have terminated the employee regardless of her request for or use of FMLA leave." Batson v. Salvation Army, 897 F.3d 1320, 1331 (11th Cir. 2018).

In the R. & R., the Magistrate Judge, applying the McDonnell Douglas burden-shifting framework, determined that genuine issues of material fact remained as to whether Northside's reasons for terminating Overby's employment were legitimate and whether those reasons were pretextual.[3]  The Magistrate Judge thus recommended that this Court deny both parties' motions for summary judgment.

**B.    Northside's Objections**

Northside raises three objections to the R. & R.  First, Northside claims that the Magistrate Judge impermissibly found a question of material fact as to Northside's legitimate reasons for terminating Overby's employment.  Second, Northside argues that the Magistrate Judge failed to consider the applicable notice requirements for FMLA leave.  Third and finally, Northside asserts that the Magistrate Judge should not have relied on Pereda v. Brookdale Senior Living Communities, 666 F.3d 1269 (11th Cir. 2012), in denying Northside's motion for summary judgment.

As a threshold matter, the parties in this case filed cross-motions for summary judgment.  In this posture, the Court must "view the facts in the light

---

[3] Northside conceded for the purposes of summary judgment that Overby could establish a prima facie case of retaliation.

most favorable to the nonmoving party on each motion." <u>James River Ins. Co. v. Ultratec Special Effects Inc</u>, 22 F.4th 1246, 1251 (11th Cir. 2022).  Many of Northside's objections concern how the Magistrate Judge viewed the facts in the record.  The Court notes at the outset that the Magistrate Judge carefully followed this standard by viewing the facts most favorably to Northside on Overby's motion and to Overby on Northside's motion.  Because Northside objects to the recommendation that *its* motion be denied, this Court, in its review of the R. & R. and the record in this case, will view the facts in the light most favorable to Overby, the non-moving party, and will draw all reasonable inferences in her favor.  <u>Strickland</u>, 239 F.3d at 1203.

### 1.    Evidence Refuting Legitimate Reasons for Overby's Termination

Northside's first objection is that the Magistrate Judge erred by finding evidence in the record refuting Northside's legitimate reasons for Overby's termination.  In other words, Northside asserts that, contrary to the Magistrate Judge's conclusion, Overby failed to meet her burden to show that Northside's proffered reasons for her termination are pretextual.  Northside specifically takes issue with how the Magistrate Judge viewed the evidence in the record concerning Northside's personnel policies and Overby's performance.

Northside claims that the R. & R. impermissibly opined about the requirements of Northside's Performance Evaluations Policy and Progressive Discipline Policy.  <u>See</u> [Doc. 60, pp. 6, 8–9].  It is true, as Northside contends, that a PIP was not mandatory under the Performance Evaluations Policy and that Northside retained discretion to terminate employees without following the procedures set forth in the Progressive Discipline Policy.  However, it is also true that Overby was not placed on a PIP; did not receive feedback about her performance at work; and was not subject to any measures under the Progressive Discipline Policy prior to her termination.

Importantly, an employer's "deviation from its normal policies and procedures" can "establish[] a genuine issue of material fact on pretext."  <u>Patterson v. Ga. Pac., LLC</u>, 38 F.4th 1336, 1354 (11th Cir. 2022); <u>see also</u> <u>Hutchinson v. Sec'y, Dep't of Veterans Affs.</u>, 766 F. App'x 883, 888 (11th Cir. 2019) ("Departures from normal procedures may be suggestive of discrimination." (quoting <u>Morrison v. Booth</u>, 763 F.2d 1366, 1374 (11th Cir. 1985))); <u>Hurlbert v. St. Mary's Health Care Sys., Inc.</u>, 439 F.3d 1286, 1299 (11th Cir. 2006) ("[A]n employer's deviation from its own standard procedures may serve as evidence of pretext.").  Northside's decision not to place Overby on a PIP or institute any measures of progressive discipline, as would be the norm under its policies, raise a

14

genuine issue of material fact as to whether its stated reasons for her termination are pretextual.  As such, instead of making factual findings about these policies, the Magistrate Judge appropriately considered the record in this case and determined that a reasonable jury could view departures from the Performance Evaluations Policy and the Progressive Discipline Policy to be probative of pretext.

Northside also asserts that the Magistrate Judge improperly assessed evidence about Overby's performance, namely by doubting Cliett's and Wright's respective testimony.  Cliett and Wright testified about Overby's deficiencies, but it is undisputed that Overby never learned of these alleged issues.  See Patterson, 38 F.4th at 1354 (finding that where a supervisor "did not mention anything at all to [an employee] about her being late on [an] assignment, it is implausible that he was so upset about it that it is the reason he fired her").  Overby herself testified that she received positive feedback, and her performance evaluations show that she met expectations.  When an employer claims that an employee was discharged for poor performance, a history of positive performance reviews can support a finding of pretext.  See id. (finding that "evidence contributing to the creation of a genuine issue of material fact on pretext" included "positive work performance reviews," which "provide[d] some basis for contradicting [the employer's] claims that [the supervisor] believed [the employee] had poor work performance, had ignored an

important deadline, and had excessive absences"); see also Benz v. Crowley Mar.

Corp., 732 F. App'x 794, 802 (11th Cir. 2018) (concluding that the employee

"presented a triable issue as to whether [the employer's] proffered reason [was]

pretextual" where, among other evidence, the employer claimed that the employee

was terminated for poor performance but her "superiors consistently gave her

positive performance reviews").  Consequently, the Magistrate Judge did not

engage in impermissible factfinding, make credibility determinations or weigh the

evidence.  Instead, the Magistrate Judge found that the record established an issue

of material fact on the issue of pretext.  This Court does not view this finding as

erroneous.

In a footnote in the objections, Northside claims that the R. & R. fails to

address whether Overby demonstrated pretext as to one of the proffered reasons for

her termination—the financial impact of COVID-19.  It is true that the R. & R. did

not address this issue.  However, in her response to Northside's motion for

summary judgment, Overby argued that this explanation for her termination was

pretextual.  See [Doc. 54, p. 22].  She pointed to Northside's Severance Program,

which applies "when staff reductions are made due to but not limited to," as

relevant here, lack of work and economic changes.  [Doc. 48-4, p. 1].  Overby

argued that had she been terminated for financial reasons, as Northside claims, she

would have been entitled to severance under Northside's Severance Program.  But here, she did not receive severance.  As discussed earlier, an employer's departure from normal policies and procedures can establish a dispute of material fact on pretext.  See Patterson, 38 F.4th at 1354.  In this case, Overby was never informed that her termination was because of financial reasons.[4]  Had Overby's employment been terminated because of pandemic-related financial concerns, it appears that she would have been entitled to a severance package under Northside's Severance Program.  On these facts, a jury could conclude that insofar as Northside claims to have terminated Overby because of financial concerns caused by COVID-19, this explanation was pretextual.

In sum, Northside contends that the Magistrate Judge made factual findings that are reserved for the jury on the question of pretext.  To the contrary, the Magistrate Judge identified evidence in the record from which a reasonable

---

[4] The Court briefly notes that Cliett's proffered reasons for Overby's terminations have not been consistent.  Cliett testified during his September 21, 2022 deposition that Overby was terminated for performance issues alone.  [Doc. 51, p. 64]; see supra note 2.  But his November 2, 2022 declaration states that Overby was terminated for the additional reason of pandemic-related financial constraints.  [Doc. 53-9, p. 3].  Of course, this Court cannot weigh evidence or make decisions about credibility on a motion for summary judgment.  Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996).  That said, the Eleventh Circuit has "recognized that an employer's failure to articulate clearly and consistently the reason for an employee's discharge may serve as evidence of pretext."  Hurlbert, 439 F.3d at 1298.

factfinder might infer that Northside's reasons for terminating Overby were pretextual.  Accordingly, Northside's first objection is **OVERRULED**.

###    2.    Sufficiency of Notice

Northside's second objection is that the R. & R. does not adequately consider the notice requirements for FMLA leave.  Northside contends that when Overby was terminated, she had neither requested FMLA leave nor informed anyone at Northside about her upcoming surgery and that she therefore failed to provide sufficient notice.  Overby asserts that she complied with Northside's notice policy and that Northside had sufficient notice of her need for FMLA leave.

In its motion for summary judgment, Northside claimed that because Overby did not have an FMLA leave request pending when her employment was terminated, she failed to invoke her right to FMLA protection.  See [Doc. 46-16, pp. 13–15].  In the R. & R., the Magistrate Judge considered whether this fact—the absence of a pending request for FMLA leave—was dispositive of Overby's claim. The Magistrate Judge found that it was not, relying on binding Eleventh Circuit precedent holding that "because the FMLA requires notice in advance of future leave, employees are protected from interference prior to the occurrence of a triggering event." Pereda v. Brookdale Senior Living Cmtys., Inc., 666 F.3d 1269,

1274 (11th Cir. 2012).[5]  In other words, the Magistrate Judge concluded that

Overby was entitled to protection from interference with her FMLA rights even

without an active request for FMLA leave.

Northside's objections largely repeat the argument from its motion for

summary judgment:  because Overby did not have an active request for FMLA

leave when she was terminated, she cannot maintain her claim for interference.[6]

But the Eleventh Circuit has disposed of this argument, explaining that "[t]he

FMLA protects an employee who gives '[n]otice of an intent to use FMLA leave in

the future.'"  Munoz v. Selig Enters., Inc., 981 F.3d 1265, 1276 (11th Cir. 2020)

---

[5] Northside objected to the Magistrate Judge's reliance on Pereda in the R. & R.  See
[Doc. 60, p. 17].  The Court addresses that objection in Part 3 of the analysis, see infra.

[6] Northside makes this argument only as to Overby's claim for interference.  See [Doc.
60, p. 13 n.5].  Indeed, Northside contends that the Magistrate Judge conflated "the notice
necessary to invoke protection from *retaliation* with that necessary to protect against
*interference* where an employer utilizes usual and customary notice procedures."  Id. at
13.  Northside, however, did not provide legal authority for the proposition that the
requisite notice differs for interference and retaliation claims, and the Eleventh Circuit
does not appear to make any such distinction.  See, e.g., Hurley v. Kent of Naples, Inc.,
746 F.3d 1161, 1167 (11th Cir. 2014) (noting that an employee must "provid[e]
appropriate notice to assert a valid interference or retaliation claim"); Avena v. Imperial
Salon & Spa, Inc., 740 F. App'x 679, 681 (11th Cir. 2018) ("[A]n employee must give
her employer appropriate notice under both the discrimination and the interference
provisions of the FMLA."); see also, e.g., Rohttis v. Sch. Dist. of Lee Cnty., No. 2:21-
CV-737, 2022 WL 3028071, at *5 (M.D. Fla. Aug. 1, 2022) ("Just as with an FMLA
interference claim, 'notice' of the need for FMLA leave is a requisite for a FMLA
retaliation claim.").

(quoting <u>Pereda</u>, 666 F.3d at 1274–75).  The Court therefore declines to consider this argument in any additional detail.

Northside also argues that Overby did not comply with Northside's own notice and procedural requirements, which oblige employees to submit FMLA requests to Cigna.  Because Overby did not submit an FMLA request for her May 1, 2020 surgery, Northside asserts that Overby failed to comply with these requirements.  This argument is thus similar to Northside's contention that Overby failed to invoke her right to FMLA leave because she had no pending leave request when she was terminated.

"Absent unusual circumstances, an employee must . . . comply with an employer's 'usual and customary notice and procedural requirements for requesting leave.'"  <u>Blake v. City of Montgomery</u>, No. 20-14229, 2021 WL 5177429, at *5 (11th Cir. Nov. 8, 2021) (quoting 29 C.F.R. §§ 825.302(d), 825.303(c)).  Overby testified that she did not request FMLA leave for her May 1, 2020 surgery because it was so quickly cancelled due to COVID-19.  A reasonable factfinder could easily conclude that these circumstances—a prompt cancellation amidst a global pandemic—constitute "unusual circumstances" that justify a departure from Northside's customary policy for requesting leave.  Indeed, "[w]hether a plaintiff's notice is adequate is generally a jury question."  <u>Lee v.</u>

Clark, No. 1:21-CV-03854, 2023 WL 2113616, at *8 (N.D. Ga. Jan. 13, 2023), R. & R. adopted, 2023 WL 2113613 (N.D. Ga. Feb. 2, 2023).

Finally, Northside contests the sufficiency of Overby's notice under FMLA regulations. To establish a violation of the FMLA, a plaintiff must provide notice that is "sufficient to make the employer aware that the employee needs FMLA-qualifying leave, and the anticipated timing and duration of the leave." Wai v. Fed. Express Corp., 461 F. App'x 876, 882 (11th Cir. 2012) (quoting Cruz v. Publix Super Mkts., Inc., 428 F.3d 1379, 1383 (11th Cir. 2005)). When Overby's employment was terminated on May 13, 2020, she had previously submitted two FMLA leave requests—on January 22, 2020, and on March 11, 2020—and her supervisors were aware of, at a minimum, her March 11, 2020 request.[7] Moreover, Overby informed both Wright and Cliett that she would eventually need surgery. See id. (finding sufficient evidence of notice where the employee shared her

---

[7] In the objections, Northside asserts that there is no evidence establishing that Cliett, Gist or Wright were aware of any request other than the March 11, 2020 request. See [Doc. 60, p. 11 n.2]. The Magistrate Judge determined that Cliett was aware of Overby's January 22, 2020 request based on his deposition testimony that he receives email notices for employees taking leave. See [Doc. 58, p. 9]; [Doc. 51, p. 17]. Cliett did not testify explicitly that he received notice of Overby's January 22, 2020 request. At the very least, there is a jury question as to whether Cliett had notice of Overby's first request for leave. In any event, it is undisputed that Cliett, Gist and Wright—all of whom participated in the decision to terminate Overby's employment—were aware of the March 11, 2020 request.

medical concerns with her supervisor).  These facts are sufficient for a reasonable jury to find that Overby provided Northside with proper notice of her need for leave.  Cf. Blake, 2021 WL 5177429, at *5 (finding that a plaintiff failed to show notice where "he never requested leave for any burnout related symptoms" prior to the relevant time period).  Consequently, Northside's second objection is **OVERRULED**.

### 3. Reliance on Pereda

Northside's final objection is that the Magistrate Judge erroneously relied on Pereda v. Brookdale Senior Living Communities, 666 F.3d 1269 (11th Cir. 2012), in the R. & R.  In Pereda, the employee was not eligible for FMLA leave at the time she requested leave "because she had not worked the requisite hours and had not yet experienced a triggering event, the birth of her child."  666 F.3d at 1272.  It was uncontested, though, that the employee would be eligible for FMLA leave and thus entitled to protection by the time she gave birth.  Id.  The Eleventh Circuit held that because the FMLA requires notice in advance of future leave, the employee was entitled to protection before the triggering event—the birth of her child—and before she became eligible under the statute.  Id. at 1274, 1276.  The court reasoned that the statutory notice period "was meant as protection for employers to provide them with sufficient notice of extended absences."  Id. at

1274.  As such, "[i]t would be illogical to interpret the notice requirement in a way that requires employees to disclose requests for leave which would, in turn, expose them to retaliation, or interference, for which they have no remedy."  Id. (quoting Reynolds v. Inter-Indus. Conf. on Auto Collision Repair, 594 F. Supp. 2d 925, 928 (N. D. Ill. 2009)).

Northside argues that Pereda is inapposite because it focused on whether an employee who was not yet eligible for FMLA leave could nonetheless receive the statute's protections.  Northside claims that while it does not dispute that Overby was eligible for leave, the issue is that Overby failed to "invoke[] her right to said leave," [Doc. 60, p. 17], presumably because she did not have a pending request for FMLA leave at the time of her termination.  In the same vein, Northside also argues that Pereda is distinct because it did not address the adequacy of the employee's notice.  Northside's first two objections to Pereda thus boil down to the same contention:  it did not address the situation where an employee, such as Overby, lacked a pending request for FMLA leave at the time of termination.  The Court addressed the question of notice above, concluding that sufficient evidence in the record shows that Northside received notice of Overby's need for FMLA leave to submit her claims to a jury.  Moreover, the Eleventh Circuit has relied on Pereda to hold that the FMLA protects employees who inform their employers that

they "would need future FMLA-qualifying leave," whether or not that employee

has yet to invoke their right to that leave.  Munoz, 981 F.3d at 1276.[8]  The Court is

therefore unpersuaded by Northside's arguments on this point.

Finally, Northside argues that Pereda concerned a health condition,

pregnancy, that is distinguishable from the one at issue here.  The Eleventh Circuit

has applied Pereda in subsequent cases involving health conditions other than

pregnancy.  See Benz v. Crowley Mar. Corp., 732 F. App'x 794, 804 (11th Cir.

2018) (applying Pereda to an FMLA case in which the plaintiff employee

"allege[d] that she was denied her right to take leave in order to care for her

daughter who had a serious health condition").  This argument is therefore

unpersuasive.  For these reasons, then, Northside's third objection is

**OVERRULED**.

## CONCLUSION

For the reasons set forth above, Northside's Objections [Doc. 60] are

**OVERRULED**.  The R. & R. [Doc. 58] is **ADOPTED** as the order of this Court.

---

[8] In Munoz, for instance, the plaintiff informed her supervisors of her medical issues and requested accommodations.  981 F.3d at 1269.  Her supervisors never advised her as to the FMLA process, and when the plaintiff was terminated, she did not have a pending request for FMLA leave.  Id. at 1271.  The absence of a pending FMLA leave request was not fatal to her claim; instead, it was sufficient that the plaintiff had given notice of an intent to use FMLA-qualifying leave in the future.  Id. at 1276.

For the reasons set forth in the R. & R. and in this order, Northside's Motion for Summary Judgment [Doc. 46] and Overby's Motion for Partial Summary Judgment [Doc. 48] are **DENIED**.

The parties are **HEREBY ORDERED** to file the consolidated pretrial order required by Local Rule 16.4 no later than twenty-one days from the entry of this Order. The parties are notified that a failure to comply with this Order may result in sanctions, including dismissal of the case or entry of default judgment. In the event a consolidated pretrial order is not filed, the Clerk is **DIRECTED** to submit the case at the expiration of the applicable time period.

If the parties would like a stay of this deadline to allow them to conduct mediation, they may file a motion to that effect. The parties are reminded that the Court can refer this case to mediation before a Magistrate Judge at no cost. If the parties would like such a referral, they may make such a request by filing a motion.

**SO ORDERED** this 21st day of August, 2023.

J. P. BOULEE
United States District Judge